PD-1288-15

PD-1288-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 9/28/2015 4:22:05 PM
Accepted 9/30/2015 2:30:25 PM
ABEL ACOSTA
CLERK

IN THE

## COURT OF CRIMINAL APPEALS OF TEXAS

| | | |
|---|---|---|
| THOMAS SMALLWOOD, JR. *APPELLANT* | § § § | |
| V. | § § | NO. _____ |
| | § § | |
| THE STATE OF TEXAS, *APPELLEE* | § § § | |

§ § §

## APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

§ § §

**MICHAEL LOGAN WARE**
**300 Burnett Street**
**Suite 160**
**Fort Worth, TX    76102**
**Telephone:  817/ 338 - 4100**
**Telecopier: 817/  698- 0000**
**Texas State Bar Number: 20864200**

**ATTORNEY FOR APPELLANT**

FILED IN
COURT OF CRIMINAL APPEALS

September 30, 2015

ABEL ACOSTA, CLERK

# IDENTITIES OF PARTIES AND COUNSEL

**Appellant:**          Thomas Jefferson Smallwood Jr.

**Represented by:**      Michael Logan Ware (on appeal)
                        300 Burnett Street
                        Suite 160
                        Fort Worth, TX 76102

**Appellee:**           The State of Texas

**Represented by:**     Sharen Wilson, *Criminal District Attorney*

                        Debra A. Windsor, Assistant District Attorney (on appeal)

                        401 W. Belknap
                        Fort Worth, TX 76196

**Trial Judge:**        The Honorable George William Gallagher
                        Presiding Judge
                        396th Judicial District Court
                        Tarrant County, Texas

# TABLE OF CONTENTS

PAGE

INDEX OF AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iv

STATEMENT REGARDING ORAL ARGUMENT . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF THE CASE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

STATEMENT OF PROCEDURAL HISTORY . . . . . . . . . . . . . . . . . . . . . . . . . 2

GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

ARGUMENT SUPPORTING GROUNDS FOR REVIEW . . . . . . . . . . . . . . . . 3

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

CERTIFICATE OF SERVICE . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

COURT OF APPEALS' OPINION (April 30, 2015). . . . . . . . . . . . APPENDIX A

COURT OF APPEALS ORDER DENYING MOTION FOR REHEARING
(August 6, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPENDIX B

COURT OF APPEALS OPINION SUBSTITUTING THE APRIL 30, 2015
OPINION (August 6, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPENDIX C

COURT OF APPEALS ORDER DENYING MOTION FOR REHEARING
(August 28, 2015 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . APPENDIX D

# INDEX OF AUTHORITIES

**Cases**

*Ansari v. State*, 2015 Tex.App.LEXIS 8192 (Tex.App.-San Antonio 2015) . . . . . 5

*Anguish v. State*, 991 S.W.2d 883 (Tex.App.-Houston [1st Dist]
1999, pet. ref'd) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19-20

*Blount v. State*, 542 S.W.2d 164 (Tex.Crim.App. 1976) . . . . . . . . . . . . . . . 17-20

*Devine v. State*, 786 S.W.2d 268 (Tex.Crim.App. 1989) . . . . . . . . . . . . . . . . . . . 20

*Francis v. State*, 36 S.W.3d 121 (Tex.Crim.App. 2000) . . . . . . . . . . . . . . . . . . . 5

*Hernandez v. State*, 2013 Tex.App.LEXIS 9291 (Tex.App.-Waco,
July 25, 2013) 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*Jackson v. Virginia*, 443 U.S. 307 (1979) . . . . . . . . . . . . . . . . . . . . . . . 5

*McDowell v. State*, 235 S.W.3d 294 (Tex.App.-Texarkana 2007, no pet.) . . . . . 20

*Potier v. State*, 2012 Tex.App.LEXIS 9473 (Tex.App.-Houston [1st Dist],
Nov. 15, 2012, pet. dismissed (unpublished) . . . . . . . . . . . . . . . . . . . . 20

*Ramirez v. State*, 336 S.W.3d 846 (Tex.App.-Amarillo 2011, pet.ref'd) . . . . 18-19

*Smith v. State*, 949 S.W.2d 333 (Tex.App.-Tyler 1996, pet.ref'd) . . . . . . . . . . . 20

**Codes, Articles, Other**

Black Law Dictionary, 4th Edition . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Texas Penal Code §22.021(a)(2)(A)(ii) . . . . . . . . . . . . . . . . . . . . . . . 15

Texas Penal Code §22.021(a)(2)(A)(iv) . . . . . . . . . . . . . . . . . . . . . . . 15

## STATEMENT REGARDING ORAL ARGUMENT

This case involves complex issues of fact and law. The undersigned counsel believes this Court's understanding of the relevant factual and legal issues could be substantially enhanced by oral argument. Appellant requests oral argument.

## STATEMENT OF THE CASE

Appellant pled not guilty to all counts of an eighteen count indictment, alleging sexual assault and aggravated sexual assault, on various dates against the same complainant.[1] Prior to jury selection, the State waived nine of the eighteen counts. The remaining nine counts consisted of three counts of sexual assault and six counts of aggravated sexual assault. The six aggravated counts alleged six discrete sexual assaults purporting to have occurred on various dates from August 2012 through November 2012. The aggravating element of each of the six discrete aggravated counts is alleged in identical statutory language, threatening to cause imminent "death or serious bodily".

The three discrete non-aggravated counts are alleged to have each occurred in the middle of this time period, in October 2012.

On October 24, 2013, the jury convicted Appellant on all nine discrete counts.

---

[1] This was, in fact, a reindictment. The original indictment was fifteen counts and contained no "aggravating" language. Both indictments contained one count of indecency with a child which was waived by the state (Clerk's Tr. at pp. 6-9 & 12-14).

1

On October 25, 2013, the trial court sentenced Appellant to six fifty-year sentences, on the aggravated counts, and three twenty-year sentences on the non-aggravated counts. All sentences to run concurrently. Appellant timely appealed.

## STATEMENT OF PROCEDURAL HISTORY

In an opinion, designated for publication, handed down on April 30, 2015, the Fort Worth Court of Appeals affirmed Appellant's convictions on all nine counts. *Smallwood, Jr. v. State*, 2015 Tex.App.LEXIS 4457 (Tex.App.Fort Worth April 30, 2015). Appellant filed a timely Motion for Rehearing. On August 6, 2015, the Court of Appeals withdrew its original opinion and issued a new published opinion, again affirming all nine of Appellant's convictions. *Smallwood, Jr. v. State*, 2015 Tex.App.LEXIS 8253 (Tex.App.Fort Worth August 6, 2015).

Appellant's timely Motion for Rehearing on the Court's second published opinion was denied on August 28, 2015. This petition was then timely filed with the Clerk of the Court of Criminal Appeals, to wit on September 28, 2015.

## GROUND FOR REVIEW

**GROUND FOR REVIEW**

> THE COURT OF APPEALS REVERSIBLY ERRED IN HOLDING THAT THE EVIDENCE WAS LEGALLY SUFFICIENT TO SUPPORT THE ALLEGED AGGRAVATING ELEMENT IN EACH OF THE SIX DISCRETE AGGRAVATED SEXUAL ASSAULT COUNTS.

2

REASONS FOR GRANTING REVIEW

In holding that the evidence was legally sufficient to support the alleged aggravating element in each of the six discrete aggravated sexual assault counts, the Court of Appeals decided on important question of state law in a way that conflicts with the applicable decisions of the Court of Criminal Appeals and the Supreme Court of the United States as well as the Texas and the United States Constitution.

## ARGUMENT SUPPORTING GROUND FOR REVIEW

Appellant was indicted on six discrete counts of aggravated sexual assault alleged to have been committed against the same fifteen year old complainant (Appellant's step-daughter). The indictment alleged specific "on or about" dates for each of the six discrete counts. The first date alleged was in August 2012 and the last was in November 2012. The indictment also alleged three discrete unaggravated sexual assault counts, against the same complainant, which were alleged to have occurred in the middle of this time period, in October 2012.

The six discrete aggravated counts each contained identical aggravating language, which read as follows:

> And the defendant by acts or words placed Alicia Carpenter in fear that death or serious bodily injury would be imminently inflicted on Alicia Carpenter or Krista Carpenter.

3

(Clerk's Tr. at pp. 6-8).

First, the State's evidence was legally insufficient to connect any of the purported threats attributed to Appellant to any of the six discrete counts of aggravated sexual assault alleged in the indictment. The Court of Appeals erroneously analyzed this evidentiary deficiency in its legal sufficiency analysis on rehearing by stating:

> The unique facts of this case require us to look at the threats as continuing during the commission of the assaults over an extended period of time.

Slip Op. on Rehearing Below at 11.

The Court below, therefore, erroneously deemed it unnecessary to analyze the six aggravated counts as six discrete crimes in which each element, including the aggravating element, must be proven beyond a reasonable doubt, which the State clearly failed to do. Rather, in order to find the evidence legally sufficient, the Court below erroneously analyzed the evidence as if the indictment alleged a single criminal episode, that continued "over an extended period of time," rather than six separate, discrete crimes, each one of which has essential statutory elements, each element of which must be proven beyond a reasonable doubt. The lower court's analysis, in essence, deletes the term "imminently inflicted" from the indictment and the statute by determining that those words have no significance. The lower court's analysis also,

4

in effect, adds the term "same criminal episode" where the legislature did not include it.

The legal sufficiency standard of review is highly deferencial and is viewed in the light most favorable to the State. *Jackson v. Virginia*, 443 U.S. 307 (1979). However, the State's evidence, in order to be legally sufficient, must not only meet the relevant statute, it must be assigned to the specific allegations made in the indictment. If the indictment alleges multiple discrete offenses, the evidence must be assigned to specific discrete counts, not simply to the "criminal episode." The unanimity cases make it clear that he proof of the elements in a multi-count indictment must be proven as to each individual discrete count. "An unanimous jury verdict ensures that the jury agrees on factual elements underlying an offense-it is more than mere agreement on a violation of a statute." *Francis v. State*, 36 S.W.3d 121, 125 (Tex.Crim.App. 2000). See, also, *Ansari v. State*, 2015 Tex.App. LEXIS 8192 (Tex.App.-San Antonio 2015):

> In Texas, the jury must "reach a unanimous verdict about the specific crime that the defendant committed." *Casio*, 353 S.W.3d at 771. This means "the jury must agree upon a single and discrete incident that would constitute the commission of the offense alleged."

*Ansari, supra.* at 8192.

The State's evidence is legally insufficient if they do not prove every element

of each discrete count, or if they prove an offense different than the one alleged in the indictment, even if the offense proven violates the same statutory provision. *Gollihar v. State*, 46 S.W.3d 243 (Tex.Crim.App. 2001).

Although each of the nine counts in the case-at-bar alleges a particular "on or about" date, it is clear from the State's evidence presented at trial, that the various dates alleged in the indictment were chosen randomly and arbitrarily. With the exception of counts 1 and 2, the complainant's testimony describing the events is extremely sketchy and does not correspond to any specific dates alleged. The State does not have to prove the exact date an offense occurred, but in this case, the State's evidence of the alleged aggravating element's in each of the six discrete aggravated counts, does not correspond to any of the particular, discrete aggravated counts alleged in the indictment. Therefore, the State, among other things, did not prove the aggravating element in any of the discrete aggravated counts alleged, and the court below used the wrong analysis, by failing to treat the counts as discrete counts. The purported threat that elevated each of the six aggravated counts had to be proven as to each discrete count, not, as stated by the court of appeals "as continuing during the commission of the assaults over an extended period of time."

The State's key witness was their alleged complainant. In her testimony, she described in some detail the first time she agreed to have sex with Appellant.

6

Although it is not clear, it is assumed that the State intended the jury to infer that this description applied to count(s) 1 and/or 2 of the indictment which were alleged to have occurred "on or about" August 10, 2012, the earliest date alleged in the indictment. According to the complainant, and viewing the evidence most favorably to the State, these two discrete offenses (vaginal and oral assaults) took place at Appellant's house in Grand Prairie, while complainant's twin brothers were asleep in another room. (R.Vol. 5 at 137).

The complainant described counts 1 and/or 2 as follows:

[PROSECUTOR]: Do you remember the first night that something happened with the defendant?

A. Yes. He said that _____ to go there and just smoke weed with him. And then we did . . .

(R.Vol.5 at 136).

The complainant went on to describe the sex act itself. (R.Vol. 5 at 138-142).

The complainant said nothing about a threat of death or serous bodily injury made during these two discrete offenses (presumably, aggravated counts one and two of the indictment), that would have elevated these two purported acts from two sexual assaults, to two aggravated sexual assaults. The complainant also did not testify that she was in fear of death or serious bodily injury during this "first night". Clearly, the

7

State did not prove the alleged aggravating element of counts 1 or 2.

The prosecutor then had the complainant summarily describe, in very cursory fashion, the other times it happened, presumably in an effort to prove each of the remaining seven discrete counts of the indictment (3-9).

[PROSECUTOR]: Is this something that happened more than once?

A. Yes.

Q. How many times do you think that it happened?

A. Like eight to 11 times. Maybe more.

. . . .

Q. For example, in August, do you believe it happened once or how many times in August?

A. Probably twice.

Q. Did it happen in September?

A. (Moving head up and down).

. . . .

Q. And do you know how many times that would have been?

A. At least once a week.

. . . .

Q. So that would have been at least four times?

8

A.    Yes, ma'am.

Q.    Did this happen in October?

A.    Yes.

Q.    And how many times in October?

A.    Like six times.

Q.    And did this happen in November?

A.    Like once or twice.

Q.    And is that when it ended?

A.    Yes.

(R.Vol. 5 at 144-145).

After this brief summary of what one can only assume was supposed to be a cursory account of the remaining seven, alleged discrete counts, the complainant testified that she received a call from Appellant saying that they did not have to do it anymore. (R.Vol. 5 at 163).

[PROSECUTOR]: And that was the last time anything happened like that?

A.    Yes, Ma'am.

Q.    Let me ask you this. Did the defendant ever say anything about what might happen if you did tell?

A.    That I shouldn't tell, nobody would believe me. He would take my

9

brothers away.

And then he told me a story about a girl who was babysitting this guy's kids, and he ended up raping her. And then she went to court, and then he pretended to be somebody that he wasn't and hit her up on Facebook and that they met up thinking it was somebody else, and he killed her.

Q.  And when you're saying he?

A.  I'm talking about the person in the story that he was telling me about.

Q.  So the defendant didn't tell you that he did these things?

A.  No.

Q.  He's telling you a story about another man?

A.  Yes.

Q.  Who ends up raping someone and then killing them?

A.  (Moving head up and down).

Q.  Is that a yes?

A.  Yes.

Q.  Do you remember when he told you that story?

A.  It was, like, <u>after</u> all that stuff had happened or it was, like, sort of at the end of all that stuff.

Q.  Near the end time period?

10

A.    (Moving head up and down).

Q.    And did that scare you?

A.    Yes.

Q.    Did he ever say anything specific about other people hurting you?

A.    No. But he kind of made it clear that if he could have done it to my mom, he could have done it to me, like, if he would have, like, what he had told her before about the assassins.

Q.    Did he – do you remember the defendant saying things to you about the Mexican mafia or assassins?

A.    Yeah.

Q.    Okay. And did he say – what did he say?

A.    That he knows people in Mexico.

Q.    And what would these people do?

A.    They would kill people.

Q.    And did he say that they might, in fact, kill you?

A.    Not, like, out of his mouth, but his actions, like the way that he would talk about it. He put it towards me that that could be a possibility.

Q.    Did you feel that – that he was threatening you with that?

A.    Yes.

Q.    Did he discuss Mexican mafia or assassins hurting your mom?

A.    Yes.

11

Q.   And did he discuss this with you on one occasion or more than one?

A.   Like twice. So more than one.

Q.   And when was that in relation to the sexual assaults?

A.   It was during.

Q.   During?

A.   During.

Q.   So the defendant discusses Mexican assassins possibly hurting you or your mom probably <u>twice during the time period</u>? [emphasis added]

A.   (Moving head up and down).

Q.   Is that a yes?

A.   Yes.

Q.   And a story about a girl who was babysitting and was raped by the dad of the children, and they were going to court and that dad coming back and killing her; is that right?

A.   Right.

Q.   And that was towards the end <u>of this time period</u>? [emphasis added]

A.   Correct.

Q.   Did you – were you scared by all that?

A.   Yes.

Q.   Did you feel that you were in danger of imminent bodily injury or death?

12

A.    Yes.

Q.    And/or death?

A.    Right.

Q.    Did you feel that your mom was in danger of imminent bodily injury or death?

A.    Yes.

Q.    Now, all the occasions that we talked about, the eight to 13 or 14 times this happened, did the defendant verbally threaten you on every single occasion?

A.    No.

Q.    Are you able to say was it only a few or half or most?

A.    It was a few.

Q.    A few. And is that one of the reasons why this went on for so long?

A.    Yes.

Q.    And why you didn't tell anyone –

A.    Correct.

Q.    – for a little while?

Okay. And I think I did ask you, did – where were you when he would make these threats to you?

A.    Like, in his car or at his house.

Q.    In the defendant's car or in his house?

13

A.    Yes.

Q.    Do you remember telling me that he threatened you on half of the occasions?

MR. STUCKEL: Object to leading and suggestive questions.

THE COURT: Sustained as to leading.

Q.    (BY MS. DAVENPORT) You've testified that that happened on a few of the occasions, more than once?

A.    More than once.

Q.    And you can think of three specifically?

A.    (Moving head up and down).

Q.    Is that right?

A.    Right.

(R. Vol. 5 at 163-167).

At this point, the complainant has testified, at best, that sometimes there was a threat during the sexual assault, but usually there was not. There is no way to assign that threat or those threats to any discrete count in the indictment. The exact nature of the threat or threats is vague and which counts, if any, the alleged "threat" purportedly applied to is impossible to tell. No reasonable juror could have found, beyond a reasonable doubt, that a particular threat was made as a part of any alleged

14

discrete count.

Appellant was indicted in each discrete aggravated count pursuant to T.P.C. §22.021(a)(2)(A)(ii), which aggravates what is otherwise an unaggravated sexual assault of a child (i.e., under seventeen) if the defendant by acts or words threatens the victim, or any person, with imminent death or serious bodily injury. Unlike other subsections of the same statute, the specific threat, whether by acts or by words, must be a part of the alleged sexual assault itself. By contrast, see T.P.C. §22.021(a)(2)(A)(ii), which aggravates an otherwise unaggravated sexual assault, if the perpetrator causes serious bodily injury or attempts to cause death, "in the course of the same criminal episode." Also, contrast T.P.C. §22.021(a)(2)(A)(iv), which aggravates an otherwise unaggravated sexual assault, if the perpetrator uses or exhibits a deadly weapon "in the course of the same criminal episode."

Further, on cross-examination, the complainant testified as follows:

[Defense Counsel]: And it's your-your testimony that you participated in events that you've described for us out of fear that Jayylo was going to go public with the photographs of you?

A. Correct.

Q. And also, part of your fear were stories that you attributed or you interpreted as threats concerning Jeff?

A. Right.

15

Q.     And as you told the prosecutor, Jeff said that if you told no one would believe you, that was one thing, right?

A.     Right

Q.     And also, that Jeff told you a story about a girl of-who was babysitting and was raped by the father?

A.     Correct.

.     .     .     .

Q.     So it wasn't, then, a direct threat by Jeff to you was it?

A.     I guess not.

.     .     .     .

Q.     Concerning threats from Jeff, did you tell us earlier today that the threat was not out of his mouth but rather his actions?

A.     He didn't, like, threaten me and say, oh, you're going to die if, you know, you tell. It wasn't like that. I was just kind of like, you know, don't tell, something bad will happen. I'll get the boys taken away from me. Something bad might happen to you. Your mom might not believe you.

(R.Vol. 5 at 224-226).[2]

Therefore, none of the alleged threats purportedly made by Appellant as testified to by complainant, are threats of "imminent" death or serious bodily injury.

---

[2]In its opinion on rehearing, the court below stated, "Complainant testified that Appellant had told her (1) that he knew people in Mexico associated with the Mexican mafia and that they would kill her and her mother without the killings being traced back to him . . ." Slip Op. below at p.10. This passage is not accurate. The complainant did not testify to that.

16

Black's Law Dictionary 4th Edition defines "imminent danger", as "immediate danger, such as must be instantly met, such as cannot be guarded against by calling for the assistance of others or the protection of the law."

In *Blount v. State*, 542 S.W.2d 164 (Tex.Crim.App. 1976), an "aggravated rape" case, "two unarmed men, including appellant, forced their way into the house trailer of the prosecutrix, who was alone at the time." *Id.* at 165. "[T]he men dragged her along the floor through the bathroom into the bedroom . . . both men engaged in sexual intercourse with her and then departed." *Id.* The victim, who was deaf, testified that one of them told her "that if [she] told they would come back and kill [her]".

The Court held that the evidence was legally insufficient to prove the aggravating element:

> . . . the only threatened death was conditional [i.e., if she told] and at some indefinite time in the future. This threat [to kill her if she told] was insufficient to satisfy the requirement of the statute that the threat be imminent. As stated in the practice commentary to Sec. 21.03:
>
> > "Note that the threatened harm of Subsection (a)(1) must be 'imminent;" hence a threat to harm someone at an indetermine time in the future does not aggravate."

*Id.* at 166 (emphasis added) (notes omitted).

As in the case-at-bar, the Court in *Blount* noted that "[a] threat can be communicated by action or conduct as well as words." *Id.* at 166 (citations omitted).

17

As in *Blount*, none of the alleged words or actions attributed to Appellant by the complainant in her testimony were imminent threats to cause death or serious bodily injury to the complainant (Alicia Carpenter), or her mother, (Krista Carpenter). As the complainant stated on cross-examination:

Q.  So it wasn't, then, a direct threat by Jeff to you was it?

A.  I guess not.

. . . .

Q.  Concerning threats from Jeff, did you tell us earlier today that the threat was not out of his mouth but rather his actions?

A.  He didn't, like, threaten me and say, oh, you're going to die if, you know, you tell. It wasn't like that. I was just kind of like, you know, don't tell, something bad will happen. I'll get the boys taken away from me. Something bad might happen to you. Your mom might not believe you.

(R.Vol. 5 at 226).

The purported words or actions at most implied a veiled conditional threat, which is legally insufficient to meet the definition of imminent death or serious bodily injury. *See, Blount, supra.*

In *Ramirez v. State*, 336 S.W.3d 846 (Tex.App.-Amarillo 2011, pet. ref'd), the Court cited *Blount* with approval in the context of a duress defense. "The Texas Court of Criminal Appeals has determined that a threat of death at some indefinite time in

18

the future is insufficient to satisfy the requirement of imminence." *Id.* at 851-52 (citing *Blount* at 166) (emphasis added).

The *Ramirez* Court went on to explain:

> . . . An imminent threat has two components of immediacy. *Anguish v. State*, 991 S.W.2d 883, 886 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd). First, the person making the threat [by words or actions] must intend and be prepared to carry out the threat immediately . . .

*Id.* at 851.

None of the words or actions attributed to Appellant by the complainant meet the "imminence" requirement of the statute under which Appellant was indicted. Nothing he purportedly said or did could reasonably cause someone to believe death or serious bodily injury to "Alicia Carpenter" or "Krista Carpenter" was imminent. See, *Hernandez v. State*, 2013 Tex.App. LEXIS 9291 (Tex.App.-Waco, July 25, 2013) (unpublished) (citing, *Blount* with approval). In *Hernandez*, the trial court correctly excluded evidence offered by the defendant in support of his duress defense. The court held that evidence of gang membership and previous crimes were irrelevant in establishing the element of the defendant's fear of imminent harm to the defendant or his family. In the case-at-bar, the State relied on testimony that Appellant claimed to have connections with the Mexican mafia and Mexican assassins and that he spoke Spanish . (R.Vol. 5 at 52 & Vol. 7 at 177). As in *Hernandez* and *Blount*, the State's

19

evidence was legally insufficient to establish an "imminent" threat of death or serious bodily injury to the complainant or her mother.

In *McDowell v. State*, 235 S.W.3d 294, 297 (Tex.App.-Texarkana 2007, no pet.), the Court held that, "[a] threat made six months before the threatened event is not an imminent threat." In *Anguish v. State*, 991 S.W.2d 883, 886-87 (Tex.App.-Houston [1st Dist.] 1999, pet. ref'd.), the Court held that a threat made four days prior to a robbery was not imminent. In *Smith v. State*, 949 S.W.2d 333, 336 (Tex.App. Tyler 1996, pet. ref'd), the Court concluded that a threat made four months earlier was not imminent.

A "fear that death or serious bodily injury would be imminently inflicted" as alleged in the indictment and as required by the applicable statute "requires a present threat; threats of future harm alone are not sufficient." *Potier v. State*, 2012 Tex.App. LEXIS 9473 (Tex.App.-Houston [1st Dist], Nov. 15, 2012, pet. dismissed (unpublished) (citing, *Blount* and *Devine v. State*, 786 S.W.2d 268, 270-71 (Tex.Crim.App. 1989).

Because there was never a threat of "imminent" death or serious bodily injury, and because none of the purported non-eminent "threats" were connected by the evidence to any of the six discrete aggravated counts, there was legally insufficient evidence that Appellant committed any of the alleged offenses under the aggravated

20

circumstances alleged in counts 1-4 and 8-9, in the indictment.

## CONCLUSION

Appellant respectfully requests that this Court grant his Petition for Discretionary Review and after a full hearing of the merits, reverse and render for judgment of acquittal on Counts 1-4, 8 & 9. In the alternative, Appellant requests that this matter be reversed and remanded to the Court of Appeals for a legal sufficiency analysis made under the correct standard of review.

LAW OFFICES OF
MICHAEL LOGAN WARE
300 Burnett Street
Suite 160
Fort Worth, Texas 76102
Telephone: (817) 338-4100
Telecopier: (817) 698-0000
Ware@mikewarelaw.com

MICHAEL LOGAN WARE
State Bar No. 20864200

ATTORNEY FOR APPELLANT

21

## CERTIFICATE OF COMPLIANCE

The undersigned certifies this petition complies with Texas Rules of Appellate Procedure 9.4(I)(3).

1.     This Petition contains 4,061 words prepared using WordPerfect and relying on WordPerfect for the word count.

_____
MICHAEL LOGAN WARE


## CERTIFICATE OF SERVICE

I hereby certify that on September 28, 2015, a true copy of this document has been served on Debra A. Windsor, Assistant District Attorney, 401 W. Belknap Street, Fort Worth, Texas 76196 by email to COAAppellatealerts@tarrantcounty.com and Lisa McMinn, State Prosecuting Attorney, P.O. Box 13046, Capitol Station, Austin, TX 78701 by email to lisa.mcminn@spa.texas.gov

_____
MICHAEL LOGAN WARE

22

# APPENDIX A

## Court of Appeals Opinion dated April 30, 2015)



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00532-CR

THOMAS JEFFERSON
SMALLWOOD, JR.

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1343309R

------------

## OPINION

------------

A jury convicted Appellant Thomas Jefferson Smallwood Jr. of six counts of aggravated sexual assault of a child under seventeen years of age and three counts of sexual assault of a child under seventeen years of age, all charged in a single indictment, and assessed his punishment at fifty years' confinement on each aggravated sexual assault count and twenty years' confinement on each sexual assault count. The trial court sentenced him accordingly, ordering the

sentences to be served concurrently. Appellant brings five issues on appeal, challenging the sufficiency of the evidence to show the aggravating element for the six convictions of aggravated sexual assault of a child (counts one through four, eight, and nine) and contending that the State misrepresented the law during voir dire and that the trial court abused its discretion by excluding evidence of the complainant's prior rape accusation against a neighbor and the testimony of two other witnesses. Because the evidence is sufficient to support the jury's verdict and because the trial court committed no reversible error, we affirm the trial court's judgments.

**Brief Facts**

Appellant and Complainant's mother (Mother) had been a couple, had shared a home with Complainant and her brother, and were the parents of twin boys, Complainant's younger half-brothers. Appellant and Mother parted ways and went through a custody battle over the twins. On July, 4, 2012, Complainant, who was fourteen years old at the time, was at Appellant's home with her twin brothers. Complainant and Mother were not getting along around this time. Appellant told Complainant that he wanted to put Mother in a hole and hire some Mexican assassins to hurt her. In the same conversation, Appellant suggested that Complainant have sex with him to make Mother mad, but Complainant refused his offer.

Later that same month, Complainant, along with her twin brothers, visited Appellant's parents in El Paso. During this trip, Complainant received messages

2

from someone who identified himself as "Jayylo" through Kik, an application on her cell phone. Jayylo sent pictures of his penis to her. She responded by "sen[ding] inappropriate pictures of [her] boobs." She never gave Jayylo her home address or her real name. Jayylo continued to send more pictures of himself to her. When Complainant threatened to stop sending Jayylo pictures, he threatened to send the photos she had sent him to her school and to the mailboxes of Mother and her neighbors. Complainant noticed that the background of one of the photos he sent her resembled a portion of Appellant's house. Complainant was then suspicious that Appellant was Jayylo.

She confronted Appellant, but he denied having a Kik account. About an hour later, Appellant called Complainant back and asked her why he had pictures of her boobs in his mailbox. Complainant started crying and told him what had happened with Jayylo and that he had threatened her. Complainant also told Appellant's mother why she was crying, and Appellant got mad at Complainant for telling his mother. Complainant turned fifteen years old while she was in El Paso.

When Complainant returned home from El Paso, she began receiving text messages from Jayylo sent directly to her cell phone number. Complainant noticed that the first six digits of Jayylo's phone number were the same as Appellant's cell phone number. Jayylo told her that he got her phone number from one of her friends, which Complainant knew not to be true. Whenever Complainant asked Jayylo who he really was, he would change his story of how

3

Complainant was supposed to know him and how old he was. Jayylo texted Complainant almost every day at different times of the day. But she could never get a response when she called him.

Jayylo continued threatening Complainant and demanded that she send him more photos, have sex with Appellant, videotape it, and send the video to Jayylo. Complainant refused. Jayylo put one of the photos Complainant had sent him on a Facebook page he had created and threatened to add all of her friends to that page. Appellant told Complainant that Jayylo was also contacting him, but she never saw any of the messages that Appellant claimed to have received.

Appellant and Complainant spoke about the situation and decided to acquiesce to Jayylo's demands. Complainant and Appellant had sexual intercourse in Appellant's house while Complainant's twin brothers were asleep. Following Jayylo's demands, Appellant and Complainant continued their sexual relationship. They had sexual intercourse "eight to eleven times[,] [m]aybe more," from August 2012 to November 2012. These sexual encounters would occur at either Appellant's or Complainant's home.

Complainant testified that she texted Jayylo that it was getting harder for her to keep these incidents a secret, and shortly after she sent this text, Appellant called her and told her that they did not "have to do it anymore." Appellant then told Complainant a story about

> a girl who was babysitting this guy's kids, and he ended up raping her. And then she went to court, and then he pretended to be

4

somebody that he wasn't and hit her up on Facebook and that they met up thinking it was somebody else, and he killed her.

This story scared Complainant. At trial, she testified that Appellant knew people from Mexico who were in the Mexican Mafia. Although Complainant testified that Appellant never specifically threatened her, she also testified that he made it clear that if he could hurt Mother, he could hurt Complainant too. In December 2012, Complainant made an outcry to Mother's friend. Shortly afterward, the decision to call the police was made. Appellant pled not guilty to all counts of an eighteen-count indictment alleging that he had committed sexual assault and aggravated sexual assault on various dates against Complainant.

Outside the presence of the jury, in an in-camera hearing, Appellant presented evidence from Ricky May. May lived in Complainant's neighborhood around 2008 to 2009. He testified that when he was eighteen years old, Complainant would contact him "through phone [and] text messaging, trying to get [him] to have sexual intercourse with her" because she was "horny." May refused Complainant's offer, but he heard that Complainant had told people in their neighborhood that he had raped her, which he denied. May was never charged with or arrested for rape. The State objected to May's testimony on hearsay grounds.

THE COURT: Response?

[PROSECUTOR]: Once again, Your Honor, this is an opinion based upon hearsay. There's no proof that she ever said these things. And this is the type of reputation and opinion evidence that is, I believe,

5

> prohibited under 412 as is relating to sexual conduct and it's not fitting in one of the categories that allows for past behavior to be admissible.

The trial court sustained the State's objection, and May was not permitted to testify in front of the jury.

Appellant also offered testimony from Jeannie Redmon outside the presence of the jury. Redmon testified that she had known Complainant for "[a]pproximately seven to eight years." Redmon testified that Complainant was "untruthful" because (1) she took items that belonged to Redmon's daughter; told Redmon that Redmon's daughter had given her the items when in fact, Redmon's daughter had not; (2) and instructed Redmon's daughter to similarly lie; she would tell Redmon and her daughter that she was dating people whom she was not dating, (3) she had said that a boy across the street had raped her; and (4) she lied about giving out her phone number to boys at a waterpark when Redmon asked her if she had done so. Redmon also testified that she thought her daughter and Complainant had gone to pornographic websites on Redmon's home computer. Appellant offered Redmon's testimony as her opinion on Complainant's truthfulness. The State objected to Redmon's testimony:

> We'll object under rule 608 and 609, also 404. I think if this witness knew [Complainant] presently, we would be legally okay with her opinion that she's untruthful, but I think four years ago is a little bit too remote. And certainly, even if that was allowed, the rules, specifically 608(b)[,] disallow specific instances of conduct. So we would object to any specific instances.
>
> Additionally, it sounds like almost all of this is hearsay and, except for perhaps the opinion as to truthfulness. But the porn use, I

6

don't think we can say that this witness knows with her own personal knowledge that it was definitely [Complainant]. I think perhaps she's basing that off of what her daughter has told her. And the same with the false claim of rape, she's admitted on cross she really does not know what happened.

The trial court sustained the State's objections, and Redmon was not permitted to testify in front of the jury.

Appellant also presented evidence from Denise Brown outside the presence of the jury. Brown testified that Complainant was friends with her daughter and that she knew Complainant in 2009 and 2010. Brown testified that Complainant was untruthful because Complainant (1) spread rumors that Brown's daughter was pregnant and (2) took some fingernail polish belonging to Brown's daughter without permission. Brown also testified that Complainant was flirtatious with boys and opined that Complainant was promiscuous. Complainant's friendship with Brown's daughter ended when Brown's daughter began dating a boy whom Complainant had previously dated, and Complainant began calling Brown's daughter a "slut." The State objected to Brown's testimony:

The State would object as to . . . this witness . . . having no personal knowledge of the things that she has referenced as far as her basis for determining this—[Complainant's] credibility. She's basing it upon hearsay. So we would object under 608.

Also, as far as going into specific instances of conduct, she doesn't—she did not personally observe them or have personal knowledge as to them.

Also, we'd object under 404, 403 as to her general characterization of [Complainant's being] boy crazy, promiscuous.

7

... [S]he has clearly demonstrated her own bias towards [Complainant] where she does not apply the standard to her own daughter as she does for [Complainant], even though they're engaged in the same conduct.

The trial court sustained the State's rule 608 objection.

**Sufficiency of the Evidence**

In his first issue, Appellant argues that the evidence is insufficient to support the jury's determination that, during the alleged aggravated sexual assaults, he, "by acts or words placed [Complainant] in fear that death or serious bodily injury would be imminently inflicted on [her] or [her mother]," as alleged in counts one through four, eight, and nine.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[2]

---

[1] *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

[2] *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

The trier of fact is the sole judge of the weight and credibility of the evidence.[3] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[4] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[5] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[6]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[7]

Complainant testified that Appellant had told her (1) that he knew people in Mexico associated with the Mexican mafia and that they would kill her and her mother without the killings being traced back to him and (2) a story about a man

---

[3]See Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); Dobbs, 434 S.W.3d at 170.

[4]Isassi v. State, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[5]Sorrells v. State, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); see Temple v. State, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[6]Jackson, 443 U.S. at 326, 99 S. Ct. at 2793; Dobbs, 434 S.W.3d at 170.

[7]Dobbs, 434 S.W.3d at 170; Hooper v. State, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

who raped his babysitter and killed her after she told someone about the rape. The outcry witness testified that Complainant had reported the Mexican mafia threat to her and that Complainant had also told her that Appellant had threatened to slit Complainant's throat and leave her in a ditch somewhere.

Appellant relies on *Blount v. State*[8] and its progeny to argue that the threats were not imminent because they were conditional. The *Blount* court found insufficient the attackers' telling the victim that if she told, they would come back and kill her because the threat was conditional.[9] As the State points out, *Blount* relied on a former version of the statute that required not only that the threat was made but that it "compelled submission to the rape."[10] That language was removed from the statute when it was later amended, and consequently, as the State argues, it does not apply to this offense.[11]

Further, a child cannot consent to sexual contact or intercourse.[12] There is no element of compulsion required to be proved in the aggravated sexual assault

---

[8]542 S.W.2d 164 (Tex. Crim. App. 1976).

[9]*Id.* at 165–66.

[10]*Id.* at 165 (quotation marks omitted).

[11]*See* Tex. Penal Code Ann. § 22.021 (West Supp. 2014) (providing elements of aggravated sexual assault); *Nichols v. State*, 692 S.W.2d 178, 180 (Tex. App.—Waco 1985, pet. ref'd) (discussing the 1981 statutory amendment removing the requirement of compelled submission).

[12]*In re B.W.*, 313 S.W.3d 818, 823–24 (Tex. 2010).

10

or sexual assault of a child.[13]  Because Complainant was a child and not competent to consent to sexual conduct, the threat of force went only to the aggravating element that elevated the offense to a higher grade of felony and therefore a higher range of punishment.[14]

The unique facts of this case require us to look at the threats within the continuum of the offending course of conduct occurring over an extended period of time.  Complainant said in her outcry and repeated at trial that Appellant—who for most of the period of the continuing offenses was a person lurking in the background of her life—made various death threats to keep her participating silently in the sexual relationship.  She understood these threats to be continuing threats of imminent harm at any time.[15]  The record supports that interpretation under the unique facts of this case.  We therefore overrule Appellant's first issue.

---

[13]See id.; see also Tex. Penal Code Ann. § 22.011(a)(2) (West 2011), § 22.021(a)(1)(B), (2).

[14]Compare Tex. Penal Code Ann. § 22.011(f) (West 2011) (providing that sexual assault is a second-degree felony), and id. § 12.33 (providing range of punishment for second-degree felonies), with id. § 22.021(a)(2)(A)(ii), (e) (providing that aggravated assault as alleged in this case is a first-degree felony), and id. § 12.32 (providing range of punishment for first-degree felonies).

[15]See, e.g., Curry v. State, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (discussing the continuing nature of an abduction and holding that because a witness testified that he saw Curry with a gun that night, "the jury could have believed that Curry had that gun and used it during the course of the abduction to prevent [the complainant's] liberation" and "the jury was free to disbelieve [the complainant's] testimony that Curry did not have a gun and that Curry did not threaten him").

## Alleged Misstatement of the Law in Voir Dire

In his second issue, Appellant argues that the State misstated the law during voir dire and that this misstatement violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution and sections ten and nineteen of article I of the Texas Constitution. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[16] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[17] We have carefully examined those portions of the record to which Appellant directs us concerning what he describes as misrepresentations of the law to the jury panel during voir dire. At no point did Appellant object or otherwise call his complaint to the attention of the trial court. Consequently, he did not preserve this issue for appellate review. We overrule Appellant's second issue.

## Excluded Evidence About Complainant

In his third, fourth, and fifth issues, Appellant argues that the trial court reversibly erred by refusing to allow him to present the testimony of May,

---

[16]Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

[17]Tex. R. App. P. 33.1(a)(2); *Everitt*, 407 S.W.3d at 263.

12

Redmon, and Brown that Complainant had made a prior false rape allegation against a neighbor and that she was untruthful. Judge Cochran has explained,

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases. And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.
>
> But, as the Supreme Court noted in *Davis v. Alaska*, there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Thus, under *Davis*, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." However, as Justice Stewart noted in concurrence, the Court neither held nor suggested that the Constitution confers a right to impeach the general credibility of a witness through otherwise prohibited modes of cross-examination. Thus, the *Davis* Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses. But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory.[18]

---

[18]*Hammer v. State*, 296 S.W.3d 555, 561–63 (Tex. Crim. App. 2009) (footnotes omitted).

13

A witness's credibility may be attacked in three ways: opinion or reputation for general truthfulness or untruthfulness and cross-examination on specific instances of conduct that establish bias, self-interest, or motive for testifying as he or she did.[19] Opinion evidence is not the same as reputation evidence.[20] As this court has explained,

> Reputation witnesses' testimony must be based on discussion with others about the subject, or on hearing others discuss the person's reputation, and not just on personal knowledge. Rule 405 requires only "substantial familiarity" with the reputation of the accused.[21]

Reputation evidence, then, must necessarily be grounded in hearsay.[22] An objection that the testimony of reputation evidence is hearsay and not based on personal knowledge thus will not lie.[23] Opinion testimony is governed by rule of evidence 701 and must be based on personal observation.[24]

Within this general framework, Judge Cochran, speaking for the unanimous *Hammer* court, has explained why Texas, unlike many other states,

---

[19]Tex. R. Evid. 405, 608.

[20]*See* Tex. R. Evid. 405, 701.

[21]*Ferrell v. State*, 968 S.W.2d 471, 474 (Tex. App.—Fort Worth 1998, pet. ref'd) (citations omitted).

[22]*See id.*; *see also* Tex. R. Evid. 405.

[23]*See* Tex. R. Evid. 405; *Ferrell*, 968 S.W.2d at 474.

[24]Tex. R. Evid. 701.

14

does not allow a defendant in a sexual assault case to impeach the complainant with evidence of prior false accusations:

> The theory for admitting prior false accusations of rape in a sex-offense prosecution is frequently analogized to Aesop's story of "The Boy Who Cried Wolf." A past false accusation makes it more likely that the witness lacks credibility and thus should not be believed concerning this accusation. But in Aesop's fable, there really was a wolf, and it killed the sheep. The moral of that story was "Nobody believes a liar . . . even when he is telling the truth." A criminal trial, however, is designed to find the truth about a specific incident, not to decide whether someone has lied in the past about the presence of wolves or about being raped. Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense.

> Therefore, Texas, unlike some jurisdictions, has not created a per se exception to Rule 608(b)'s general prohibition against impeachment with specific instances of conduct to admit evidence of the complainant's prior false allegations of abuse or molestation. The inferential chain of logic that is barred by Rule 608(b) is this:

>> The witness lied to his employer (or did some specific act of dishonesty)

>> That specific conduct proves dishonest character;

>> Therefore, the witness is generally dishonest and should not be believed in this case.

> Applied to prior false accusations, the barred evidentiary chain is this:

>> Complainant made a prior false accusation;

>> That specific conduct proves dishonest character;

>> Therefore, the complainant is generally dishonest and should not be believed in this case.

> This is precisely the prohibited propensity chain of logic—"Once a thief, always a thief," "Once a liar, always a liar"—that underlies both Rules 404(b) and 608(b). A sexual assault

15

complainant is not a volunteer for an exercise in character assassination. Several federal courts have held that exclusion of this evidence, offered to attack the victim's general credibility, does not violate the Confrontation Clause.

If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules.

For example, in *Billodeau v. State*, we held that the trial court should have admitted evidence that the child complainant in that aggravated sexual assault prosecution had made threats to falsely accuse two neighbors of sexual molestation. We held that such evidence supported the defensive theory that the complainant's motive in accusing the defendant of sexual molestation was "rage and anger" when he was thwarted. Evidence of threats to accuse others of sexual molestation when he displayed "rage and anger" at being thwarted is some evidence of a common motive for accusing the defendant of sexual molestation. The chain of logic is as follows:

The victim makes false accusations in certain circumstances and for certain reasons;

Those circumstances and reasons are present in this case;

Therefore, the victim made a false accusation in this case.

One might even call this modus operandi evidence admissible under Rule 404(b). Evidence of other acts or wrongs may be admissible under Rule 404(b) to prove such matters as motive, intent, scheme, or any other relevant purpose except conduct in conformity with bad character. Even "the doctrine of chances" has been invoked as a possible basis for admitting evidence of a victim's prior false accusation of rape. Similarly, evidence of a victim's prior sexual activity may be admissible under Rule 412, the Texas Rape Shield Law, when offered to establish the victim's motive or bias against the defendant.

In sum, several different state evidentiary rules permit the use of prior false accusations when offered to show the witness's bias or motive or for some other relevant, noncharacter purpose. The Confrontation Clause mandate of *Davis v. Alaska* is not inconsistent

16

with Texas evidence law. Thus, compliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence.[25]

We now examine the case at bar.

**Prior Rape**

Appellant argues that the trial court abused its discretion by excluding May's testimony that he had heard a rumor that Complainant was telling people that he had sexually assaulted her and Redmon's testimony pertaining to the alleged incident. Appellant offered May's testimony under rule of evidence 404(b).[26] While Appellant now argues that the trial court's ruling abridged certain of his constitutional rights, at trial he spoke only of credibility and Rule 404(b). Appellant's complaints at trial do not conform to his constitutional complaints on appeal; we therefore do not address his constitutional complaints.[27]

Additionally, May's testimony dealt with rumors on the street; it did not constitute testimony of Complainant's reputation for truthfulness, nor were his claims that he had heard that she was spreading rumors in any way substantiated to provide a basis for an opinion that she was not worthy of belief under oath. And to the extent that his testimony was intended to be evidence of

---

[25]*Hammer*, 296 S.W.3d at 564–66 (footnotes omitted).

[26]Tex. R. Evid. 404(b).

[27]*See* Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

prior false accusations of sexual assault, such testimony is not admissible for the purpose of showing her character conformity or propensity to lie.[28]

Although Appellant also argues that the evidence was admissible to show motive and modus operandi, May candidly admitted that Complainant never accused him to his face of raping her. His belief that she had accused him was based on rumors that he had heard. The record does not establish confirmation of May's belief that she falsely accused him of rape. Nor do the rumors he heard suggest a motive for falsely accusing Appellant or a modus operandi. May said that Complainant would ask him to have sex with her, and he refused. But we cannot discern how the rumors he heard that she was accusing him of rape were ever verified. The record before this court therefore does not establish the admissibility of this evidence of purported false accusations of rape under rule 404(b).

At trial, Appellant explained in seeking admission of the false accusation testimony, "the false claim of rape is going to credibility." We hold that the rumors of false rape accusations were not admissible, and based on the record before us, that the trial court did not abuse its discretion in denying Appellant's request to present this evidence before the jury. We overrule Appellant's third issue.

---

[28]*See Hammer*, 296 S.W.3d at 564.

**Redmon's and Brown's Opinion Testimony**

In his fourth and fifth issues, Appellant complains of the exclusion of the testimony of Redmon and Brown concerning their opinions of Complainant's credibility. As we understand the record, Appellant appears to have offered these opinions by having the women explain specific acts that they suspected had occurred and speculate on others. He did not offer their testimony on any constitutional basis. We therefore do not address the constitutional arguments he raises on appeal.[29]

Redmon's testimony was based on her belief that Complainant had lied and had told Redmon's daughter to lie about having given Complainant things that Complainant had stolen from Redmon's daughter. Redmon also believed that Complainant had lied to her and to her daughter about dating, smoking marijuana, and being raped. Appellant explained to the trial court that he was offering Redmon's testimony as "possible opinion testimony on truthfulness."

Brown believed that Complainant had spread untruthful rumors about her daughter and that she had stolen her daughter's nail polish. We are not clear on the legal basis for which Appellant offered this evidence, other than as an opinion of Complainant's truthfulness. Judge Keasler has explained for the Texas Court of Criminal Appeals,

---

[29]See Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92.

[A] less common notion of error preservation comes into play in this case, although certainly not a novel one. Professors Goode, Wellborn and Sharlot refer to it as "party responsibility." They explain it this way:

> To the question, which party has the responsibility regarding any particular matter, it is infallibly accurate to answer with another question: which party is complaining now on appeal? This is because in a real sense both parties are always responsible for the application of any evidence rule to any evidence. Whichever party complains on appeal about the trial judge's action must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question.

The basis for party responsibility is, among other things, Appellate Rule 33.1. It provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the party "stated the grounds for the ruling that (he) sought from the trial court with sufficient specificity to make the trial court aware of the complaint." So it is not enough to tell the judge that evidence is admissible. The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.

We recently discussed this notion in *Martinez v. State*. There, the defendant moved to suppress oral statements due to the State's failure to comply with Art. 20.17. The State argued for the first time on appeal that Art. 20.17 did not apply. We concluded that the State forfeited this argument by failing to bring it to the trial judge's attention. We explained that "both Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 are 'judge-protecting' rules of error preservation. The basic principle of both rules is that of 'party responsibility.'" We recognized that "the party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question." The issue, we said, "is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally 'correct' in every sense, but whether the complaining party on appeal brought

20

to the trial court's attention the very complaint that party is now making on appeal."

Similarly, in *Willover v. State*, the defendant sought to admit two videotaped interviews of the victim. At trial,

> it (was) clear that, although (the defendant) did not actually recite the specific rule of evidence he was relying upon, (he) sought to admit the videotapes for impeachment purposes. (He) did not argue, nor was there any discussion at trial, that the tapes were not hearsay or that the videotapes were admissible under any exception to the hearsay rule other than Article 38.071 or for impeachment purposes.

> On appeal, the defendant argued for the first time that the videotapes were not hearsay. We relied on the notion of "party responsibility" to reject this argument because "(i)n order to have evidence admitted under a hearsay exception, the proponent of the evidence must specify which exception he is relying upon." It was up to the defendant, we said, and "not the trial court, to specify which exception to the hearsay rule he was relying upon or to specify how the evidence was not hearsay."

> In some cases, we have applied the "party responsibility" theory without using those precise words. In *Clark v. State*, the State presented the testimony of Dr. James Grigson that the defendant would be a future danger. The defendant sought at trial to introduce a letter and accompanying report which listed eleven individuals convicted of capital murder whose sentences had later been commuted or reduced. In several of those cases, Dr. Grigson had predicted that the individual would be a future danger. The trial court refused to admit the evidence.

> On appeal, the defendant argued that the excluded evidence was admissible to impeach Dr. Grigson and show that his prior future dangerousness predictions had turned out to be incorrect. But the defendant had not articulated this basis for admission at trial. At trial, he had argued the evidence was admissible to impeach statements that Dr. Grigson had made in Lubbock County. The State had objected that the impeachment went to a collateral matter, and the trial judge had agreed.

21

We rejected the defendant's argument on appeal because he "did not clearly articulate" that he wanted to admit the evidence to demonstrate Grigson's past mistakes in predicting future dangerousness. We said that the trial judge "never had the opportunity to rule upon (the defendant's) appellate rationale." Since the defendant "did not sufficiently clearly expressly offer the evidence for the purpose which he now claims on appeal," that argument could not be raised on appeal.

Finally, in *Jones v. State*, the defendant sought at trial to admit the grand jury testimony of a witness who asserted her Fifth Amendment privilege against self-incrimination and refused to testify. The State objected, claiming hearsay. We concluded that the defendant failed to preserve error because he never specified which portions of the witness's testimony he wanted to admit into evidence. We said:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection. In this case, because the trial court chose to exclude the evidence, appellant is the party adversely affected by his own default. Because appellant failed to specify which portion of the transcript he intended to introduce into evidence, the court was presented with a proffer containing both admissible and inadmissible evidence. When evidence which is partially admissible and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered.

## Application

In this case, Reyna argued to the trial judge that the evidence should be admitted for "credibility." He said that he was "not offering it to prove the truth of the matter asserted" and "not offering it to go into her sexuality." Instead, he argued, "I'm offering it to

22

demonstrate that as to prior sexual activities, that she made allegations that there were prior sexual allegations, and recanted."

Reyna did not cite to any rules of evidence, cases, or constitutional provisions. Reyna's references to "the truth of the matter asserted" reflect that he was arguing that the evidence was not hearsay under Evidence Rule 801(d). His claim that he was not offering it "to go into her sexuality" reflects his argument that the evidence should not be excluded under Evidence Rule 412(b). These arguments are both based on the Rules of Evidence. Reyna's reference to "credibility" could be a reference to either the Rules of Evidence or the Confrontation Clause.

Reyna told the trial judge that the purpose of admitting the evidence was to attack the victim's credibility, but he did not provide the basis for admitting the evidence. He could have been relying on the Rules of Evidence or the Confrontation Clause. It was up to the judge to discern some basis for admitting the evidence.

We have said that "(t)he purpose of requiring (an) objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error. An objection on hearsay does not preserve error on Confrontation Clause grounds.

Although this case involves a proffer of evidence rather than an objection, the same rationale applies. Reyna did not argue that the Confrontation Clause demanded admission of the evidence. Reyna's arguments for admitting the evidence could refer to either the Rules of Evidence or the Confrontation Clause. His arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument. Because Reyna "did not clearly articulate" that the Confrontation Clause demanded admission of the evidence, the trial judge "never had the opportunity to rule upon" this rationale. As the losing party, Reyna must "suffer on appeal the consequences of his insufficiently specific offer." Reyna did not do "everything necessary to bring to the judge's

23

attention the evidence rule or statute in question and its precise and proper application to the evidence in question."[30]

In the case now before this court, Appellant offered the evidence on the vague basis of "possible" opinion testimony. He did not sustain his burden of explaining to the trial court on the record, and by extension to us, why Redmon's and Brown's testimony was admissible—whether under an evidentiary rule or statute, as an exception to an evidentiary rule or statute, or under a constitutional provision. We therefore overrule Appellant's fourth and fifth issues.

## Conclusion

Having overruled Appellant's five issues on appeal, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

GARDNER, J., and WALKER, J., concur without opinion.

PUBLISH

DELIVERED: April 30, 2015

---

[30]*Reyna v. State*, 168 S.W.3d 173, 176–79 (Tex. Crim. App. 2005) (citations omitted).

24

# APPENDIX B

**Court of Appeals Order denying Appellee's
Motion for Rehearing dated
August 6, 2015**



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00532-CR

| | | |
|---|---|---|
| Thomas Jefferson Smallwood, Jr. | § | From the 396th District Court |
| | § | of Tarrant County (1343309R) |
| v. | § | August 6, 2015 |
| | § | Opinion by Justice Dauphinot |
| The State of Texas | § | (p) |

## JUDGMENT ON REHEARING

After considering the Appellant's motion for rehearing, we deny the motion. We withdraw our April 30, 2015 opinion and judgment and substitute the following.

This court has considered the record on appeal in this case and holds that there was no error in the trial court's judgments. It is ordered that the judgments of the trial court are affirmed.

SECOND DISTRICT COURT OF APPEALS

By _/s/ Lee Ann Dauphinot_____
    Justice Lee Ann Dauphinot

## APPENDIX C

**Court of Appeals Opinion dated August 6, 2015)**

25



# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-13-00532-CR

THOMAS JEFFERSON
SMALLWOOD, JR.

APPELLANT

V.

THE STATE OF TEXAS

STATE

----------

FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
TRIAL COURT NO. 1343309R

----------

## OPINION ON APPELLANT'S MOTION FOR REHEARING

----------

After considering Appellant's motion for rehearing, we deny the motion, but we withdraw our opinion and judgment of April 30, 2015, and substitute the following.

A jury convicted Appellant Thomas Jefferson Smallwood Jr. of six counts of aggravated sexual assault of a child under seventeen years of age and three counts of sexual assault of a child under seventeen years of age, all charged in a

single indictment, and assessed his punishment at fifty years' confinement on each aggravated sexual assault count and twenty years' confinement on each sexual assault count. The trial court sentenced him accordingly, ordering the sentences to be served concurrently. Appellant brings five issues on appeal, challenging the sufficiency of the evidence to show the aggravating element for the six convictions of aggravated sexual assault of a child (counts one through four, eight, and nine) and contending that the State misrepresented the law during voir dire and that the trial court abused its discretion by excluding evidence of the complainant's prior rape accusation against a neighbor and the testimony of two other witnesses. Because the evidence is sufficient to support the jury's verdict and because the trial court committed no reversible error, we affirm the trial court's judgments.

**Brief Facts**

Appellant and Complainant's mother (Mother) had been a couple, had shared a home with Complainant and her brother, and were the parents of twin boys, Complainant's younger half-brothers. Appellant and Mother parted ways and went through a custody battle over the twins. On July, 4, 2012, Complainant, who was fourteen years old at the time, was at Appellant's home with her twin brothers. Complainant and Mother were not getting along around this time. Appellant told Complainant that he wanted to put Mother in a hole and hire some Mexican assassins to hurt her. In the same conversation, Appellant suggested

2

that Complainant have sex with him to make Mother mad, but Complainant refused his offer.

Later that same month, Complainant, along with her twin brothers, visited Appellant's parents in El Paso. During this trip, Complainant received messages from someone who identified himself as "Jayylo" through Kik, an application on her cell phone. Jayylo sent pictures of his penis to her. She responded by "sen[ding] inappropriate pictures of [her] boobs." She never gave Jayylo her home address or her real name. Jayylo continued to send more pictures of himself to her. When Complainant threatened to stop sending Jayylo pictures, he threatened to send the photos she had sent him to her school and to the mailboxes of Mother and her neighbors. Complainant noticed that the background of one of the photos he sent her resembled a portion of Appellant's house. Complainant was then suspicious that Appellant was Jayylo.

She confronted Appellant, but he denied having a Kik account. About an hour later, Appellant called Complainant back and asked her why he had pictures of her boobs in his mailbox. Complainant started crying and told him what had happened with Jayylo and that he had threatened her. Complainant also told Appellant's mother why she was crying, and Appellant got mad at Complainant for telling his mother. Complainant turned fifteen years old while she was in El Paso.

When Complainant returned home from El Paso, she began receiving text messages from Jayylo sent directly to her cell phone number. Complainant

3

noticed that the first six digits of Jayylo's phone number were the same as Appellant's cell phone number. Jayylo told her that he got her phone number from one of her friends, which Complainant knew not to be true. Whenever Complainant asked Jayylo who he really was, he would change his story of how Complainant was supposed to know him and how old he was. Jayylo texted Complainant almost every day at different times of the day. But she could never get a response when she called him.

Jayylo continued threatening Complainant and demanded that she send him more photos, have sex with Appellant, videotape it, and send the video to Jayylo. Complainant refused. Jayylo put one of the photos Complainant had sent him on a Facebook page he had created and threatened to add all of her friends to that page. Appellant told Complainant that Jayylo was also contacting him, but she never saw any of the messages that Appellant claimed to have received.

Appellant and Complainant spoke about the situation and decided to acquiesce to Jayylo's demands. Complainant and Appellant had sexual intercourse in Appellant's house while Complainant's twin brothers were asleep. Following Jayylo's demands, Appellant and Complainant continued their sexual relationship. They had sexual intercourse "eight to eleven times[,] [m]aybe more," from August 2012 to November 2012. These sexual encounters would occur at either Appellant's or Complainant's home.

Complainant testified that she texted Jayylo that it was getting harder for her to keep these incidents a secret, and shortly after she sent this text, Appellant

4

called her and told her that they did not "have to do it anymore." Appellant then told Complainant a story about

> a girl who was babysitting this guy's kids, and he ended up raping her. And then she went to court, and then he pretended to be somebody that he wasn't and hit her up on Facebook and that they met up thinking it was somebody else, and he killed her.

This story scared Complainant. At trial, she testified that Appellant knew people from Mexico who were in the Mexican Mafia. Although Complainant testified that Appellant never specifically threatened her, she also testified that he made it clear that if he could hurt Mother, he could hurt Complainant too. In December 2012, Complainant made an outcry to Mother's friend. Shortly afterward, the decision to call the police was made. Appellant pled not guilty to all counts of an eighteen-count indictment alleging that he had committed sexual assault and aggravated sexual assault on various dates against Complainant.

Outside the presence of the jury, in an in-camera hearing, Appellant presented evidence from Ricky May. May lived in Complainant's neighborhood around 2008 to 2009. He testified that when he was eighteen years old, Complainant would contact him "through phone [and] text messaging, trying to get [him] to have sexual intercourse with her" because she was "horny." May refused Complainant's offer, but he heard that Complainant had told people in their neighborhood that he had raped her, which he denied. May was never charged with or arrested for rape. The State objected to May's testimony on hearsay grounds.

5

THE COURT: Response?

[PROSECUTOR]: Once again, Your Honor, this is an opinion based upon hearsay. There's no proof that she ever said these things. And this is the type of reputation and opinion evidence that is, I believe, prohibited under 412 as is relating to sexual conduct and it's not fitting in one of the categories that allows for past behavior to be admissible.

The trial court sustained the State's objection, and May was not permitted to testify in front of the jury.

Appellant also offered testimony from Jeannie Redmon outside the presence of the jury. Redmon testified that she had known Complainant for "[a]pproximately seven to eight years." Redmon testified that Complainant was "untruthful" because (1) she took items that belonged to Redmon's daughter, told Redmon that Redmon's daughter had given her the items when in fact, Redmon's daughter had not, and instructed Redmon's daughter to similarly lie; (2) she would tell Redmon and her daughter that she was dating people whom she was not dating; (3) she had said that a boy across the street had raped her; and (4) she lied about giving out her phone number to boys at a waterpark when Redmon asked her if she had done so. Redmon also testified that she thought her daughter and Complainant had gone to pornographic websites on Redmon's home computer. Appellant offered Redmon's testimony as her opinion on Complainant's truthfulness. The State objected to Redmon's testimony:

We'll object under rule 608 and 609, also 404. I think if this witness knew [Complainant] presently, we would be legally okay with her opinion that she's untruthful, but I think four years ago is a little bit too

6

> remote. And certainly, even if that was allowed, the rules, specifically 608(b)[,] disallow specific instances of conduct. So we would object to any specific instances.
>
> Additionally, it sounds like almost all of this is hearsay and, except for perhaps the opinion as to truthfulness. But the porn use, I don't think we can say that this witness knows with her own personal knowledge that it was definitely [Complainant]. I think perhaps she's basing that off of what her daughter has told her. And the same with the false claim of rape, she's admitted on cross she really does not know what happened.

The trial court sustained the State's objections, and Redmon was not permitted to testify in front of the jury.

Appellant also presented evidence from Denise Brown outside the presence of the jury. Brown testified that Complainant was friends with her daughter and that she knew Complainant in 2009 and 2010. Brown testified that Complainant was untruthful because Complainant (1) spread rumors that Brown's daughter was pregnant and (2) took some fingernail polish belonging to Brown's daughter without permission. Brown also testified that Complainant was flirtatious with boys and opined that Complainant was promiscuous. Complainant's friendship with Brown's daughter ended when Brown's daughter began dating a boy whom Complainant had previously dated, and Complainant began calling Brown's daughter a "slut." The State objected to Brown's testimony:

> The State would object as to . . . this witness . . . having no personal knowledge of the things that she has referenced as far as her basis for determining this—[Complainant's] credibility. She's basing it upon hearsay. So we would object under 608.

7

Also, as far as going into specific instances of conduct, she doesn't—she did not personally observe them or have personal knowledge as to them.

Also, we'd object under 404, 403 as to her general characterization of [Complainant's being] boy crazy, promiscuous. . . . [S]he has clearly demonstrated her own bias towards [Complainant] where she does not apply the standard to her own daughter as she does for [Complainant], even though they're engaged in the same conduct.

The trial court sustained the State's rule 608 objection.

**Sufficiency of the Evidence**

In his first issue, Appellant argues that the evidence is insufficient to support the jury's determination that, during the alleged aggravated sexual assaults, he, "by acts or words placed [Complainant] in fear that death or serious bodily injury would be imminently inflicted on [her] or [her mother]," as alleged in counts one through four, eight, and nine.

In our due-process review of the sufficiency of the evidence to support a conviction, we view all the evidence in the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.[1] This standard gives full play to the responsibility of the trier of fact to resolve conflicts in the testimony, to

---

[1]*Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014).

8

weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.[2]

The trier of fact is the sole judge of the weight and credibility of the evidence.[3] Thus, when performing an evidentiary sufficiency review, we may not re-evaluate the weight and credibility of the evidence and substitute our judgment for that of the factfinder.[4] Instead, we determine whether the necessary inferences are reasonable based upon the cumulative force of the evidence when viewed in the light most favorable to the verdict.[5] We must presume that the factfinder resolved any conflicting inferences in favor of the verdict and defer to that resolution.[6]

The standard of review is the same for direct and circumstantial evidence cases; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor.[7]

---

[2]*Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Dobbs*, 434 S.W.3d at 170.

[3]*See* Tex. Code Crim. Proc. Ann. art. 38.04 (West 1979); *Dobbs*, 434 S.W.3d at 170.

[4]*Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010).

[5]*Sorrells v. State*, 343 S.W.3d 152, 155 (Tex. Crim. App. 2011); *see* *Temple v. State*, 390 S.W.3d 341, 360 (Tex. Crim. App. 2013).

[6]*Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793; *Dobbs*, 434 S.W.3d at 170.

[7]*Dobbs*, 434 S.W.3d at 170; *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Complainant testified that Appellant had told her (1) that he knew people in Mexico associated with the Mexican mafia and that they would kill her and her mother without the killings being traced back to him and (2) a story about a man who raped his babysitter and killed her after she told someone about the rape. The outcry witness testified that Complainant had reported the Mexican mafia threat to her and that Complainant had also told her that Appellant had threatened to slit Complainant's throat and leave her in a ditch somewhere.

Appellant relies on *Blount v. State*[8] and its progeny to argue that the threats were not imminent because they were conditional. The *Blount* court found insufficient the attackers' telling the victim that if she told, they would come back and kill her because the threat was conditional.[9] As the State points out, *Blount* relied on a former version of the statute that required not only that the threat was made but that it "compelled submission to the rape."[10] That language was removed from the statute when it was later amended, and consequently, as the State argues, it does not apply to this offense.[11]

---

[8]542 S.W.2d 164 (Tex. Crim. App. 1976).

[9]*Id.* at 165–66.

[10]*Id.* at 165 (quotation marks omitted).

[11]*See* Tex. Penal Code Ann. § 22.021 (West Supp. 2014) (providing elements of aggravated sexual assault); *Nichols v. State*, 692 S.W.2d 178, 180 (Tex. App.—Waco 1985, pet. ref'd) (discussing the 1981 statutory amendment removing the requirement of compelled submission).

10

Further, a child cannot consent to sexual contact or intercourse.[12] There is no element of compulsion required to be proved in the aggravated sexual assault or sexual assault of a child.[13] Because Complainant was a child and not competent to consent to sexual conduct, the threat went only to the aggravating element that elevated the offense to a higher grade of felony and therefore a higher range of punishment.[14]

The unique facts of this case require us to look at the threats as continuing during the commission of the assaults over an extended period of time. Complainant said in her outcry and repeated at trial that Appellant—who for most of the period of the offenses was a person lurking in the background of her life— made various death threats to keep her participating silently in the sexual relationship. She understood these threats to be continuing threats of imminent harm at any time.[15] The record supports that interpretation under the unique facts of this case. We therefore overrule Appellant's first issue.

---

[12]*In re B.W.*, 313 S.W.3d 818, 823–24 (Tex. 2010).

[13]*See id.; see also* Tex. Penal Code Ann. § 22.011(a)(2) (West 2011), § 22.021(a)(1)(B), (2).

[14]*Compare* Tex. Penal Code Ann. § 22.011(f) (West 2011) (providing that sexual assault is a second-degree felony), *and id.* § 12.33 (providing range of punishment for second-degree felonies), *with id.* § 22.021(a)(2)(A)(ii), (e) (providing that aggravated assault as alleged in this case is a first-degree felony), *and id.* § 12.32 (providing range of punishment for first-degree felonies).

[15]*See, e.g., Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000) (discussing the continuing nature of an abduction and holding that because a

## Alleged Misstatement of the Law in Voir Dire

In his second issue, Appellant argues that the State misstated the law during voir dire and that this misstatement violated his rights under the Sixth and Fourteenth Amendments to the United States Constitution and sections ten and nineteen of article I of the Texas Constitution. To preserve a complaint for our review, a party must have presented to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling if they are not apparent from the context of the request, objection, or motion.[16] Further, the trial court must have ruled on the request, objection, or motion, either expressly or implicitly, or the complaining party must have objected to the trial court's refusal to rule.[17] We have carefully examined those portions of the record to which Appellant directs us concerning what he describes as misrepresentations of the law to the jury panel during voir dire. At no point did Appellant object or otherwise call his complaint to the attention of the trial court. Consequently, he did not preserve this issue for appellate review. We overrule Appellant's second issue.

---

witness testified that he saw Curry with a gun that night, "the jury could have believed that Curry had that gun and used it during the course of the abduction to prevent [the complainant's] liberation" and "the jury was free to disbelieve [the complainant's] testimony that Curry did not have a gun and that Curry did not threaten him").

[16]Tex. R. App. P. 33.1(a)(1); *Everitt v. State*, 407 S.W.3d 259, 262–63 (Tex. Crim. App. 2013); *Sanchez v. State*, 418 S.W.3d 302, 306 (Tex. App.—Fort Worth 2013, pet. ref'd).

[17]Tex. R. App. P. 33.1(a)(2); *Everitt*, 407 S.W.3d at 263.

12

## Excluded Evidence About Complainant

In his third, fourth, and fifth issues, Appellant argues that the trial court reversibly erred by refusing to allow him to present the testimony of May, Redmon, and Brown that Complainant had made a prior false rape allegation against a neighbor and that she was untruthful. Judge Cochran has explained,

> Trials involving sexual assault may raise particular evidentiary and constitutional concerns because the credibility of both the complainant and defendant is a central, often dispositive, issue. Sexual assault cases are frequently "he said, she said" trials in which the jury must reach a unanimous verdict based solely upon two diametrically different versions of an event, unaided by any physical, scientific, or other corroborative evidence. Thus, the Rules of Evidence, especially Rule 403, should be used sparingly to exclude relevant, otherwise admissible evidence that might bear upon the credibility of either the defendant or complainant in such "he said, she said" cases. And Texas law, as well as the federal constitution, requires great latitude when the evidence deals with a witness's specific bias, motive, or interest to testify in a particular fashion.

> But, as the Supreme Court noted in *Davis v. Alaska*, there is an important distinction between an attack on the general credibility of a witness and a more particular attack on credibility that reveals "possible biases, prejudices, or ulterior motives of the witness as they may relate directly to issues or personalities in the case at hand." Thus, under *Davis*, "the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination." However, as Justice Stewart noted in concurrence, the Court neither held nor suggested that the Constitution confers a right to impeach the general credibility of a witness through otherwise prohibited modes of cross-examination. Thus, the *Davis* Court did not hold that a defendant has an absolute constitutional right to impeach the general credibility of a witness in any fashion that he chooses. But the constitution is offended if the state evidentiary rule would prohibit him from cross-examining a

13

witness concerning possible motives, bias, and prejudice to such an extent that he could not present a vital defensive theory.[18]

A witness's credibility may be attacked in three ways: opinion or reputation for general truthfulness or untruthfulness and cross-examination on specific instances of conduct that establish bias, self-interest, or motive for testifying as he or she did.[19] Opinion evidence is not the same as reputation evidence.[20] As this court has explained,

> Reputation witnesses' testimony must be based on discussion with others about the subject, or on hearing others discuss the person's reputation, and not just on personal knowledge. Rule 405 requires only "substantial familiarity" with the reputation of the accused.[21]

Reputation evidence, then, must necessarily be grounded in hearsay.[22] An objection that the testimony of reputation evidence is hearsay and not based on personal knowledge thus will not lie.[23] Opinion testimony is governed by rule of evidence 701 and must be based on personal observation.[24]

---

[18]*Hammer v. State*, 296 S.W.3d 555, 561–63 (Tex. Crim. App. 2009) (footnotes omitted).

[19]Tex. R. Evid. 405, 608.

[20]*See* Tex. R. Evid. 405, 701.

[21]*Ferrell v. State*, 968 S.W.2d 471, 474 (Tex. App.—Fort Worth 1998, pet. ref'd) (citations omitted).

[22]*See id.*; *see also* Tex. R. Evid. 405.

[23]*See* Tex. R. Evid. 405; *Ferrell*, 968 S.W.2d at 474.

[24]Tex. R. Evid. 701.

Within this general framework, Judge Cochran, speaking for the unanimous *Hammer* court, has explained why Texas, unlike many other states, does not allow a defendant in a sexual assault case to impeach the complainant with evidence of prior false accusations:

> The theory for admitting prior false accusations of rape in a sex-offense prosecution is frequently analogized to Aesop's story of "The Boy Who Cried Wolf." A past false accusation makes it more likely that the witness lacks credibility and thus should not be believed concerning this accusation. But in Aesop's fable, there really was a wolf, and it killed the sheep. The moral of that story was "Nobody believes a liar . . . even when he is telling the truth." A criminal trial, however, is designed to find the truth about a specific incident, not to decide whether someone has lied in the past about the presence of wolves or about being raped. Prior false allegations of rape do not tend to prove or disprove any of the elements of the charged sexual offense.

> Therefore, Texas, unlike some jurisdictions, has not created a per se exception to Rule 608(b)'s general prohibition against impeachment with specific instances of conduct to admit evidence of the complainant's prior false allegations of abuse or molestation. The inferential chain of logic that is barred by Rule 608(b) is this:

> > The witness lied to his employer (or did some specific act of dishonesty)

> > That specific conduct proves dishonest character;

> > Therefore, the witness is generally dishonest and should not be believed in this case.

> Applied to prior false accusations, the barred evidentiary chain is this:

> > Complainant made a prior false accusation;

> > That specific conduct proves dishonest character;

> > Therefore, the complainant is generally dishonest and should not be believed in this case.

15

This is precisely the prohibited propensity chain of logic—"Once a thief, always a thief," "Once a liar, always a liar"—that underlies both Rules 404(b) and 608(b). A sexual assault complainant is not a volunteer for an exercise in character assassination. Several federal courts have held that exclusion of this evidence, offered to attack the victim's general credibility, does not violate the Confrontation Clause.

If, however, the cross-examiner offers evidence of a prior false accusation of sexual activity for some purpose other than a propensity attack upon the witness's general character for truthfulness, it may well be admissible under our state evidentiary rules.

For example, in *Billodeau v. State*, we held that the trial court should have admitted evidence that the child complainant in that aggravated sexual assault prosecution had made threats to falsely accuse two neighbors of sexual molestation. We held that such evidence supported the defensive theory that the complainant's motive in accusing the defendant of sexual molestation was "rage and anger" when he was thwarted. Evidence of threats to accuse others of sexual molestation when he displayed "rage and anger" at being thwarted is some evidence of a common motive for accusing the defendant of sexual molestation. The chain of logic is as follows:

The victim makes false accusations in certain circumstances and for certain reasons;

Those circumstances and reasons are present in this case;

Therefore, the victim made a false accusation in this case.

One might even call this modus operandi evidence admissible under Rule 404(b). Evidence of other acts or wrongs may be admissible under Rule 404(b) to prove such matters as motive, intent, scheme, or any other relevant purpose except conduct in conformity with bad character. Even "the doctrine of chances" has been invoked as a possible basis for admitting evidence of a victim's prior false accusation of rape. Similarly, evidence of a victim's prior sexual activity may be admissible under Rule 412, the Texas Rape Shield Law, when offered to establish the victim's motive or bias against the defendant.

16

In sum, several different state evidentiary rules permit the use of prior false accusations when offered to show the witness's bias or motive or for some other relevant, noncharacter purpose. The Confrontation Clause mandate of *Davis v. Alaska* is not inconsistent with Texas evidence law. Thus, compliance with a rule of evidence will, in most instances, avoid a constitutional question concerning the admissibility of such evidence.[25]

We now examine the case at bar.

**Prior Rape**

Appellant argues that the trial court abused its discretion by excluding May's testimony that he had heard a rumor that Complainant was telling people that he had sexually assaulted her and Redmon's testimony pertaining to the alleged incident. Appellant offered May's testimony under rule of evidence 404(b).[26] While Appellant now argues that the trial court's ruling abridged certain of his constitutional rights, at trial he spoke only of credibility and Rule 404(b). Appellant's complaints at trial do not conform to his constitutional complaints on appeal; we therefore do not address his constitutional complaints.[27]

Additionally, May's testimony dealt with rumors on the street; it did not constitute testimony of Complainant's reputation for truthfulness, nor were his claims that he had heard that she was spreading rumors in any way

---

[25]*Hammer*, 296 S.W.3d at 564–66 (footnotes omitted).

[26]Tex. R. Evid. 404(b).

[27]*See* Tex. R. App. P. 33.1(a)(1); *Lovill v. State*, 319 S.W.3d 687, 691–92 (Tex. Crim. App. 2009).

17

substantiated to provide a basis for an opinion that she was not worthy of belief under oath. And to the extent that his testimony was intended to be evidence of prior false accusations of sexual assault, such testimony is not admissible for the purpose of showing her character conformity or propensity to lie.[28]

Although Appellant also argues that the evidence was admissible to show motive and modus operandi, May candidly admitted that Complainant never accused him to his face of raping her. His belief that she had accused him was based on rumors that he had heard. The record does not establish confirmation of May's belief that she falsely accused him of rape. Nor do the rumors he heard suggest a motive for falsely accusing Appellant or a modus operandi. May said that Complainant would ask him to have sex with her, and he refused. But we cannot discern how the rumors he heard that she was accusing him of rape were ever verified. The record before this court therefore does not establish the admissibility of this evidence of purported false accusations of rape under rule 404(b).

At trial, Appellant explained in seeking admission of the false accusation testimony, "the false claim of rape is going to credibility." We hold that the rumors of false rape accusations were not admissible, and based on the record before us, that the trial court did not abuse its discretion in denying Appellant's

---

[28]See *Hammer*, 296 S.W.3d at 564.

18

request to present this evidence before the jury. We overrule Appellant's third issue.

### Redmon's and Brown's Opinion Testimony

In his fourth and fifth issues, Appellant complains of the exclusion of the testimony of Redmon and Brown concerning their opinions of Complainant's credibility. As we understand the record, Appellant appears to have offered these opinions by having the women explain specific acts that they suspected had occurred and speculate on others. He did not offer their testimony on any constitutional basis. We therefore do not address the constitutional arguments he raises on appeal.[29]

Redmon's testimony was based on her belief that Complainant had lied and had told Redmon's daughter to lie about having given Complainant things that Complainant had stolen from Redmon's daughter. Redmon also believed that Complainant had lied to her and to her daughter about dating, smoking marijuana, and being raped. Appellant explained to the trial court that he was offering Redmon's testimony as "possible opinion testimony on truthfulness."

Brown believed that Complainant had spread untruthful rumors about her daughter and that she had stolen her daughter's nail polish. We are not clear on the legal basis for which Appellant offered this evidence, other than as an opinion

---

[29]See Tex. R. App. P. 33.1(a)(1); *Lovill*, 319 S.W.3d at 691–92.

19

of Complainant's truthfulness.  Judge Keasler has explained for the Texas Court of Criminal Appeals,

> [A] less common notion of error preservation comes into play in this case, although certainly not a novel one.  Professors Goode, Wellborn and Sharlot refer to it as "party responsibility."  They explain it this way:
>
>> To the question, which party has the responsibility regarding any particular matter, it is infallibly accurate to answer with another question:  which party is complaining now on appeal?  This is because in a real sense both parties are always responsible for the application of any evidence rule to any evidence.  Whichever party complains on appeal about the trial judge's action must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule in question and its precise and proper application to the evidence in question.
>
> The basis for party responsibility is, among other things, Appellate Rule 33.1.  It provides that as a prerequisite to presenting a complaint for appellate review, the record must show that the party "stated the grounds for the ruling that (he) sought from the trial court with sufficient specificity to make the trial court aware of the complaint."  So it is not enough to tell the judge that evidence is admissible.  The proponent, if he is the losing party on appeal, must have told the judge why the evidence was admissible.
>
> We recently discussed this notion in *Martinez v. State*.  There, the defendant moved to suppress oral statements due to the State's failure to comply with Art. 20.17.  The State argued for the first time on appeal that Art. 20.17 did not apply.  We concluded that the State forfeited this argument by failing to bring it to the trial judge's attention.  We explained that "both Texas Rule of Appellate Procedure 33.1 and Texas Rule of Evidence 103 are 'judge-protecting' rules of error preservation.  The basic principle of both rules is that of 'party responsibility.'"  We recognized that "the party complaining on appeal (whether it be the State or the defendant) about a trial court's admission, exclusion, or suppression of evidence must, at the earliest opportunity, have done everything necessary to bring to the judge's attention the evidence rule or statute in question

20

and its precise and proper application to the evidence in question." The issue, we said, "is not whether the appealing party is the State or the defendant or whether the trial court's ruling is legally 'correct' in every sense, but whether the complaining party on appeal brought to the trial court's attention the very complaint that party is now making on appeal."

Similarly, in *Willover v. State*, the defendant sought to admit two videotaped interviews of the victim. At trial,

it (was) clear that, although (the defendant) did not actually recite the specific rule of evidence he was relying upon, (he) sought to admit the videotapes for impeachment purposes. (He) did not argue, nor was there any discussion at trial, that the tapes were not hearsay or that the videotapes were admissible under any exception to the hearsay rule other than Article 38.071 or for impeachment purposes.

On appeal, the defendant argued for the first time that the videotapes were not hearsay. We relied on the notion of "party responsibility" to reject this argument because "(i)n order to have evidence admitted under a hearsay exception, the proponent of the evidence must specify which exception he is relying upon." It was up to the defendant, we said, and "not the trial court, to specify which exception to the hearsay rule he was relying upon or to specify how the evidence was not hearsay."

In some cases, we have applied the "party responsibility" theory without using those precise words. In *Clark v. State*, the State presented the testimony of Dr. James Grigson that the defendant would be a future danger. The defendant sought at trial to introduce a letter and accompanying report which listed eleven individuals convicted of capital murder whose sentences had later been commuted or reduced. In several of those cases, Dr. Grigson had predicted that the individual would be a future danger. The trial court refused to admit the evidence.

On appeal, the defendant argued that the excluded evidence was admissible to impeach Dr. Grigson and show that his prior future dangerousness predictions had turned out to be incorrect. But the defendant had not articulated this basis for admission at trial. At trial, he had argued the evidence was admissible to impeach

21

statements that Dr. Grigson had made in Lubbock County. The State had objected that the impeachment went to a collateral matter, and the trial judge had agreed.

We rejected the defendant's argument on appeal because he "did not clearly articulate" that he wanted to admit the evidence to demonstrate Grigson's past mistakes in predicting future dangerousness. We said that the trial judge "never had the opportunity to rule upon (the defendant's) appellate rationale." Since the defendant "did not sufficiently clearly expressly offer the evidence for the purpose which he now claims on appeal," that argument could not be raised on appeal.

Finally, in *Jones v. State*, the defendant sought at trial to admit the grand jury testimony of a witness who asserted her Fifth Amendment privilege against self-incrimination and refused to testify. The State objected, claiming hearsay. We concluded that the defendant failed to preserve error because he never specified which portions of the witness's testimony he wanted to admit into evidence. We said:

> The trial court need never sort through challenged evidence in order to segregate the admissible from the excludable, nor is the trial court required to admit only the former part or exclude only the latter part. If evidence is offered and challenged which contains some of each, the trial court may safely admit it all or exclude it all, and the losing party, no matter who he is, will be made to suffer on appeal the consequences of his insufficiently specific offer or objection. In this case, because the trial court chose to exclude the evidence, appellant is the party adversely affected by his own default. Because appellant failed to specify which portion of the transcript he intended to introduce into evidence, the court was presented with a proffer containing both admissible and inadmissible evidence. When evidence which is partially admissible and partially inadmissible is excluded, a party may not complain upon appeal unless the admissible evidence was specifically offered.

22

## Application

In this case, Reyna argued to the trial judge that the evidence should be admitted for "credibility." He said that he was "not offering it to prove the truth of the matter asserted" and "not offering it to go into her sexuality." Instead, he argued, "I'm offering it to demonstrate that as to prior sexual activities, that she made allegations that there were prior sexual allegations, and recanted."

Reyna did not cite to any rules of evidence, cases, or constitutional provisions. Reyna's references to "the truth of the matter asserted" reflect that he was arguing that the evidence was not hearsay under Evidence Rule 801(d). His claim that he was not offering it "to go into her sexuality" reflects his argument that the evidence should not be excluded under Evidence Rule 412(b). These arguments are both based on the Rules of Evidence. Reyna's reference to "credibility" could be a reference to either the Rules of Evidence or the Confrontation Clause.

Reyna told the trial judge that the purpose of admitting the evidence was to attack the victim's credibility, but he did not provide the basis for admitting the evidence. He could have been relying on the Rules of Evidence or the Confrontation Clause. It was up to the judge to discern some basis for admitting the evidence.

We have said that "(t)he purpose of requiring (an) objection is to give to the trial court or the opposing party the opportunity to correct the error or remove the basis for the objection." When a defendant's objection encompasses complaints under both the Texas Rules of Evidence and the Confrontation Clause, the objection is not sufficiently specific to preserve error. An objection on hearsay does not preserve error on Confrontation Clause grounds.

Although this case involves a proffer of evidence rather than an objection, the same rationale applies. Reyna did not argue that the Confrontation Clause demanded admission of the evidence. Reyna's arguments for admitting the evidence could refer to either the Rules of Evidence or the Confrontation Clause. His arguments about hearsay did not put the trial judge on notice that he was making a Confrontation Clause argument. Because Reyna "did not clearly articulate" that the Confrontation Clause demanded admission of the evidence, the trial judge "never had the opportunity

23

to rule upon" this rationale. As the losing party, Reyna must "suffer on appeal the consequences of his insufficiently specific offer." Reyna did not do "everything necessary to bring to the judge's attention the evidence rule or statute in question and its precise and proper application to the evidence in question."[30]

In the case now before this court, Appellant offered the evidence on the vague basis of "possible" opinion testimony. He did not sustain his burden of explaining to the trial court on the record, and by extension to us, why Redmon's and Brown's testimony was admissible—whether under an evidentiary rule or statute, as an exception to an evidentiary rule or statute, or under a constitutional provision. We therefore overrule Appellant's fourth and fifth issues.

**Conclusion**

Having overruled Appellant's five issues on appeal, we affirm the trial court's judgments.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.

PUBLISH

DELIVERED: August 6, 2015

---

[30]*Reyna v. State*, 168 S.W.3d 173, 176–79 (Tex. Crim. App. 2005) (citations omitted).

24

## APPENDIX D

**Court of Appeals Order denying Appellee's
Motion for Rehearing dated
August 28, 2015**



# COURT OF APPEALS
### SECOND DISTRICT OF TEXAS
### FORT WORTH

## NO. 02-13-00532-CR

THOMAS JEFFERSON
SMALLWOOD, JR.

APPELLANT

V.

THE STATE OF TEXAS

STATE

------------

## FROM THE 396TH DISTRICT COURT OF TARRANT COUNTY
## TRIAL COURT NO. 1343309R

------------

## ORDER

------------

We have considered "Appellant's Motion For Rehearing."

It is the opinion of the court that the motion for rehearing should be and is hereby denied and that the opinion and judgment of August 6, 2015 stand unchanged.

The clerk of this court is directed to transmit a copy of this order to the attorneys of record.

SIGNED August 28, 2015.

/s/ Lee Ann Dauphinot
LEE ANN DAUPHINOT
JUSTICE

PANEL: DAUPHINOT, GARDNER, and WALKER, JJ.